UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
RICHARD PAUL ZUCKERMAN,            :
                                   :
            Plaintiff,             :       Civ. No. 17-7269 (MCA)
                                   :
      v.                           :
                                   :
UNITED STATES,                     :       **OPINION**
                                   :
            Defendant.             :
_____:

**MADELINE COX ARLEO, U.S.D.J.**

I.   **INTRODUCTION**

*Pro se* Plaintiff/Petitioner Richard Paul Zuckerman ("Petitioner or "Zuckerman")[1] is proceeding with is a complaint/petition seeking a writ of audita querela or coram nobis. For the following reasons, the complaint/petition is denied.

II.  **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

In 1987, Petitioner filed a civil lawsuit under 42 U.S.C. § 1983 seeking a judgment that certain New Jersey laws relating to the issuance of permits for firearms were unconstitutional, as well as expungement of a prior state disorderly persons conviction. (*See* Crim. No. 91-108, ECF No. 10-1 at ¶ 1). The case was assigned to the Honorable Dickinson R. Debevoise. (*See id.*). Judge Debevoise granted the State of New Jersey's motion for summary judgment. (*See id.*). Thereafter, Petitioner sent Judge Debevoise a threatening letter stating that he would do some

---

[1] The caption on CM/ECF lists the parties as Plaintiff and Defendant. However, as Petitioner is seeking a writ of audita querela or coram nobis, the parties are more appropriately named Petitioner and Respondent. The Clerk will be ordered to make this change to the caption on the docket.

things out of "Faces of Death"[2] if the Court kept "fucking [Petitioner] around." (*See id.* at ¶ 2). Petitioner was subsequently indicted for mailing a threatening communication to a federal judge, in violation of 18 U.S.C. §§ 876 and 2. *See United States v. Zuckerman*, 367 F. App'x 291, 292 (3d Cir. 2009). Zuckerman was found incompetent to stand trial. *See id.* The indictment was dismissed without prejudice at the government's request. *See id.*

Approximately one year later, the Federal Bureau of Investigation ("FBI") and the United States Attorney's Office learned that Petitioner was attempting to buy guns in Florida and bring them back to New Jersey. *See id.* Petitioner was then re-indicted on the original charge, namely mailing a threatening communication to a federal judge. *See id.* Petitioner was convicted at trial. *See id.* The District Court initially sentenced him to a term of hospitalization after finding Petitioner required psychiatric care. *See id.* However, once the medical facility determined Petitioner no longer needed treatment, Zuckerman was sentenced to time served and a three-year period of supervised release. *See id.* n.1.

Petitioner appealed to the Third Circuit, claiming, among other things, several of the same claims raised in this action, namely violation of the Speedy Trial Act, improper jury instructions and that the second indictment impermissibly punished him for exercising his Second Amendment rights. (*See* Crim. No. 91-108 ECF 10-1 at ¶ 13). The Third Circuit affirmed the judgment of conviction on direct appeal. *See United States v. Zuckerman*, 981 F.2d 1249 (3d Cir. 1992).

In 1992 and 1994, Petitioner filed § 2255 motions, alleging ineffective assistance of counsel. *See Zuckerman*, 367 F. App'x at 293. Both were denied by the District Court and the

---

[2] "Faces of Death" are apparently commercially produced films that depict violence, torture and death of animals and people. (*See* ECF 10-1 ¶ 2).

Third Circuit affirmed.  *See id.*; *see also Zuckerman v. United States*, 8 F.3d 815 (3d Cir. 1993); *Zuckerman v. United States*, 39 F.3d 1174 (3d Cir. 1994).

In 2008, Petitioner sought relief again, this time filing a petition for writ of coram nobis or audita querela.  (*See* Crim. No. 91-108 ECF 1).  In this 2008 petition, he raised the following issues:

> In light of *District of Columbia v. Heller* . . . his conviction violated the Due Process clause of the Fifth Amendment because the decision to prosecute the second indictment was based on his attempts to purchase firearms; (B) he should have been granted a change of venue; (C) he was entitled to an appellate panel from another circuit on direct appeal; (D) the appointed advisory defense attorney provided ineffective assistance of counsel; I the Third Circuit engaged in unlawful retaliation by entering a judgment order on direct appeal rather than hearing oral argument; (F) the trial court erred in failing to advise the jury that exaggeration is a defense to a mail threat charge; (G) the Speedy Trial Act was violated; (H) the court-appointed criminal defense attorney provided ineffective assistance in obtaining psychiatric evaluation; (I) the trial judge undermined his right to a jury trial by telling the jury it was required to follow the trial judge's instructions; and (J) the court should liberally relitigate issues that had earlier been asserted and denied.

*See Zuckerman*, 367 F. App'x at 292-93.

Finding that these issues had already been litigated, Judge Linares denied *with prejudice* Petitioner's claims relating to the Speedy Trial Act, ineffective assistance of counsel, and the broad request to relitigate previously denied claims, items (G), (H), and (J), without requiring any response from the Government.  *See id.* at 293.  After the Government filed its response to Petitioner's remaining claims, Judge Linares denied his remaining requests for relief.  *See id.*

The Third Circuit affirmed.  It found all but one of Petitioner's claims could have been raised earlier noting: "[Zuckerman] pursued a direct appeal, and has had two post-conviction chances to raise challenges to his conviction and sentence."  *Id.*  Therefore, those claims were

not cognizable under coram nobis or audita querela. The Third Circuit found that the only claim Petitioner could not have raised earlier was his discriminatory prosecution argument based on *Heller*, because *Heller* was decided in 2008. *See id.* at 294. Regardless, the Third Circuit found that it was unnecessary to consider the merits of that claim because Petitioner had not shown "that such an extraordinary remedy" in the form of coram nobis or audita querela "is necessary; *i.e.*, that he was convicted for conduct that was not criminal . . . or that an error affects the very jurisdiction of the trial court." *Id.* The Third Circuit concluded, "[m]ailing a threatening communication is a crime, and Zuckerman makes no claim that the District Court lacked jurisdiction to try the case against him." *Id.*

Petitioner filed this action in September 2017. (*See* ECF 1). Petitioner asserts five "separate and distinct" claims. In Petitioner's own words, his claims are as follows:

1. Case law rendered after the conviction and direct appeal, creating new law requiring enforcement of the ten-day-transportation-rule during mental competency proceedings; case law stating the reason for pre-trial speedy act delay must be explained, not a conclusory "in the interests of justice." ("Claim I")

2. [1] New case law spelling it out in black and white the Second Amendment of the U.S. Constitution is indeed intended to safeguard an individual person's right to keep and bear arms to purchase a firearm. ("Claim IIa")

   [2] Johnson and Welch struck down the same section of 18 U.S.C. Section 924(e)(2)(B)(ii), which is worded similar to the reasons the federal prosecutors expressed for instituting this second indictment. The only reason Trial Judge Politan stated for denying the undersigned's pro se pre-trial motion to dismiss the second indictment based

on bad faith prosecution (back in 1991) was failure of the U.S. Supreme Court to say the Second Amendment protects an individual person. ("Claim IIb")

[3] The undersigned only learned within the past month from the website biography page of the Chief Justice of New Jersey Supreme Court that Stuart Jeff Rabner had previously worked as a law clerk for and became "good friends" with Hon. Dickinson R. Debevoise (deceased) D.N.J. (Newark). Stuart Jeff Rabner was the trial prosecutor in the first indictment and was also involved in the second indictment, involving a mail threat upon Judge Debevoise (deceased). The undersigned asserts this constitutes a conflict of interest of a constitutional dimension which contributes to the undersigned's aforementioned allegations of bad faith prosecution, especially from the comments made by victim Judge Debevoise in 2014, that he become [sic] "good friends" and mentored Mr. Rabner, PCA 81, PCA 82. The undersigned askes this court to require prosecutors henceforth to include in pre-trial discovery all possible conflicts of interests of prosecutors. ("Claim IIc")

3. Indiana v. Edwards, 554 U.S. 164 (2008), establishing a new constitutional standard for deciding whether a criminal defendant should be granted permission to proceed thru trial in *pro se*. The criminal defendant must now have more mental competence to proceed thru trial in *pro se*, which now puts the burden on the trial court to order a psychiatric exam and hold any evidentiary hearing with expert witness testimony on whether the defendant with a "long history of mental illness" has this higher amount of mental competence to proceed thru trial in *pro se*. Trial Court Judge Politan failed to order a psychiatric exam, a psychiatric expert, or hold an evidentiary hearing. Court-appointed stand-by counsel did not even show up for trial. Trial Judge Politan denied the

   undersigned's request to delay the trial until stand-by counsel showed up for trial, forced the undersigned to proceed thru trial without stand-by counsel present. The undersigned was blocked from law library and access to legal materials, and was shackled during trial. It wasn't until right after the undersigned was convicted did Trial Judge Politan order a psychiatric exam, afterwards psychiatric treatment, which was for the undersigned to be sentenced, not whether the undersigned was mentally competent to proceed in *pro se* through trial. ("Claim III")

4. Recent case law establishing new federal constitutional rights to be free from being shackled during trial, Deck v. Missouri, while a courtroom security guard stands closely behind the shackled criminal defendant in the presence of the jury, bobbing his head to the same side and practically directly over the undersigned's head in whatever direction the undersigned moved; and recent 9th circuit *en banc* case prohibiting shackling of pre-trial criminal defendants. ("Claim IV")

5. Recent case law, Snyder v. Phelps and Matal v. Tam, which would further support my request for a jury instruction on the permissible language towards public officials, which Trial Judge Politan denied and on direct appeal the 3rd Circuit affirmed without explanation in a "judgment order." ("Claim V")

Respondent filed an answer in opposition. (*See* ECF 10). Thereafter, Petitioner filed a reply. (*See* ECF 12). The matter is fully briefed and ready for disposition.

### III.    ANALYSIS

The writ of error coram nobis and the writ of audita querela are available in criminal cases to the extent they fill in gaps in the current system of post-conviction relief. *See Massey v. United States*, 581 F.3d 172, 174 (3d Cir. 2009) (audita querela); *United States v. Baptiste*, 223

F.3d 188, 189 (3d Cir. 2000) (coram nobis).  Granting a writ of coram nobis or audita querela, pursuant to the All Writs Act, is an extraordinary remedy.  *See United States v. Stoneman*, 870 F.2d 102, 105–06 (3d Cir. 1989).  It is available to federal courts in criminal matters under the All Writs Act, 28 U.S.C. § 1651(a).  *See Stoneman*, 870 F.3d at 105-06 (citing *United States v. Morgan*, 346 U.S. 502 (1954)).  It is used to attack allegedly invalid convictions which have continuing consequences when the petitioner has served his sentence and is no longer "in custody" for purposes of 28 U.S.C. § 2255.  The petitioner must show that he is suffering from continuing consequences of the allegedly invalid conviction.[3]  *See Stoneman*, 870 F.2d at 105-06 (citing *Morgan* 346 U.S. at 512-13).

With respect to coram nobis, as the Third Circuit recently explained:

> Although the modern contours of coram nobis are broader than at common law, the writ is still limited to "'extraordinary' cases presenting circumstances compelling its use 'to achieve justice.'" *United States v. Denedo*, 556 U.S. 904, 910-11, 129 S. Ct. 2213, 173 L. Ed. 2d 1235 (2009) (quoting *Morgan*, 346 U.S. at 510, 74 S. Ct. 247).  Coram nobis may not issue if alternative remedies, such as habeas corpus, are available.  *Denedo*, 556 U.S. at 911, 129 S. Ct. 2213; *United States v. Rhines*, 640 F.3d 69, 71 (3d Cir. 2011).  28 U.S.C. § 2255 provides a means to vacate, set aside, or correct a conviction, yet it does not apply if a defendant is no longer in custody.  As a residual and interstitial remedy, coram nobis can fill that gap.  It provides a means to challenge a federal conviction where a party who is no longer in custody for purposes of § 2255 faces continuing consequences as a result of being convicted.  *Rhines*, 640 F.3d at 71; *United States v. Baptiste*, 223 F.3d 188, 189 (3d Cir. 2000); *Chaidez*, 568 U.S. at 345 n.1, 133 S. Ct. 1103; *United States v. Stoneman*, 870 F.2d 102, 105-06 (3d Cir. 1989).

> "[T]he standard for obtaining [coram nobis] is more stringent than that applicable on direct appeal or in habeas corpus" in recognition of judicial interests in finality and efficiency.  *Rhines*, 640 F.3d at

---

[3] The Third Circuit assumed in deciding Petitioner's previous coram nobis/audita querela petition that he had shown collateral consequences because of his inability to possess firearms lawfully.  *See Zuckerman*, 367 F. App'x at 293 (citing *Torzala v. United States*, 545 F.3d 517, 521 (7th Cir. 2008)).  This Court will do the same.

> 71; *Stoneman*, 870 F.2d at 106. Accordingly, coram nobis relief is limited and seeks out error of the most fundamental character—the kind that renders the proceeding itself irregular and invalid. *Mayer*, 235 U.S. at 69, 35 S. Ct. 16; *see also Morgan*, 346 U.S. at 511, 74 S. Ct. 247 ("[R]eview should be allowed through this extraordinary remedy only under circumstances compelling such action to achieve justice."); *Stoneman*, 870 F.2d at 106 ("The error must go to the jurisdiction of the trial court, thus rendering the trial itself invalid."). "An error which could be remedied by a new trial, such as an error in jury instructions, does not normally come within the writ," *Stoneman*, 870 F.2d at 106 (citing *Mayer*, 235 U.S. at 69, 35 S. Ct. 16 and *United States v. Gross*, 614 F.2d 365, 368 (3d Cir. 1980)), and it is presumed that the prior proceedings were properly conducted. The petitioner has the burden to show otherwise. *Morgan*, 346 U.S. at 512, 74 S. Ct. 247; *United States v. Cariola*, 323 F.2d 180, 184 (3d Cir. 1963). This means that "it is difficult to conceive of a situation in a federal criminal case today where [a writ of *coram nobis*] would be necessary or appropriate." *Carlisle v. United States*, 517 U.S. 416, 429, 116 S. Ct. 1460, 134 L. Ed. 2d 613 (1996) (alteration in original) (internal quotation marks and citations omitted).
>
> A distillation of our caselaw establishes five prerequisites for coram nobis relief: the petitioner (1) is no longer in custody; (2) suffers continuing consequences from the purportedly invalid conviction; (3) provides sound reasons for failing to seek relief earlier; (4) had no available remedy at the time of trial; and (5) asserted error(s) of a fundamental kind. *See Mendoza v. United States*, 690 F.3d 157, 159 (3d Cir. 2012); *Orocio*, 645 F.3d at 634 n.4; *Rhines*, 640 F.3d at 71; *Stoneman*, 870 F.2d at 105-06.

*Ragbir v. United States*, 950 F.3d 54, 62 (3d Cir. 2020).

> Although [the Third Circuit] has not articulated a precise standard for what constitutes continuing consequences, it has held that a petitioner must establish that he suffers from something more than mere embarrassment or loss of prestige as a result of the invalid conviction. Continuing consequences that have been considered sufficient to justify *coram nobis* relief include "the denial of the right to vote or the subsequent imposition of a sentence heavier than would otherwise have been appropriate."

*United States v. Biondi*, 600 F. App'x 45, 46 (3d Cir. 2015) (footnotes omitted).

At common law, the writ of audita querela permitted a defendant to obtain "relief against a judgment or execution because of some defense or discharge arising subsequent to the rendition of the judgment." *Massey*, 581 F.3d at 174 (internal quotations and citation omitted). Historically, the writ was a remedy primarily for judgment debtors. *See id.* As recently noted by Judge Rodriguez:

> the writ of *audita querela* is available only where there is (1) a legal objection (2) to a judgment that has arisen subsequent to the conviction and (3) is not redressable by another postconviction remedy. *See Muirhead v. Attorney Gen. of U.S.,* 262 F. App'x 473, 474 (3d Cir. 2008); *see, e.g., United States v. LaPlante*, 57 F.3d 252, 253 (2d Cir. 1995) (holding that nothing occurred after conviction that remotely created legal objection to conviction that might be redressable by writ of *audita querela*); *see, e.g., United States v. Holder*, 936 F.2d 1, 5 (1st Cir. 1991) (holding that writ of audita querela does not and cannot provide a purely equitable basis for relief independent of any legal defect in an underlying judgment). An equitable objection will not do. *See Muirhead*, 262 F. App'x at 474.
>
> When considering whether a petition satisfies the requirements for *audita querela* relief, a court may not use the statutory limits implemented by Congress regarding habeas relief as the basis for finding that the petitioner has no other means of redress. *Hazard v. Samuels,* 206 F. App'x. 234, 236 (3d Cir. 2006); *United States v. Paster*, 190 F. App'x. 138, 139 (3d Cir.), *cert. denied*, 549 U.S. 1013, (2006). *See also United States v. Fraction*, 315 F. App'x 431 (3d Cir. 2009). In other words, the fact that an otherwise cognizable claim is time-barred under 28 U.S.C. § 2255 does not satisfy the Congressional requirement that the claim has no other means of redress; simply being late is not enough.

*Terry v. United States*, Crim. No. 11-519, 2020 WL 3428018, at *1–2 (D.N.J. June 23, 2020).

> [T]he difference between *coram nobis* and *audita querela* is largely "one of timing, not substance." *Doe v. INS,* 120 F.3d 200, 203 n. 4 (9th Cir.1997). Whereas *coram nobis* could attach to a judgment that was infirm at the time it was rendered (for reasons that later came to light), *audita querela* attache[s] to a judgment that was correct when rendered, but was later rendered infirm by events that occurred after the judgment.

*United States v. Crowell*, 374 F.3d 790, 795 (9th Cir. 2004).

It is well established that a motion filed pursuant to 28 U.S.C. § 2255 is the presumptive means of challenging a federal conviction, and in the rare instance where a § 2255 motion is "inadequate or ineffective," a federal prisoner may resort to a writ of habeas corpus filed pursuant to 28 U.S.C. § 2241. *See Massey*, 581 F.3d at 174 n.1. Because Petitioner is no longer in custody, he could no longer file a § 2255 motion (even with the Third Circuit's permission); nor could he file a § 2241 petition.

Many of Petitioner's arguments were or should have been raised in his numerous previous challenges to his conviction over the past three decades. None of Petitioner's arguments demonstrate what is required for coram nobis or audita querela relief. Petitioner unsuccessfully raised many of these claims in his prior challenges to his conviction. Nevertheless, and for purposes of completeness, this Court will analyze each of Petitioner's individual claims in further detail.

  A. Claim I

Petitioner's argument in Claim I that the Speedy Trial Act was violated was rejected by the Third Circuit on his direct appeal, and, for that reason, in Petitioner's previous petition for writ of coram nobis/audita querela by Judge Linares in 2009. (*See* Crim. No. 91-108 ECF 1 at 4-5, 3-1 at 4). Specifically, on direct appeal, Petitioner had claimed that the Speedy Trial Act was violated because of transferring him for a mental health evaluation was rejected by the Third Circuit. (*See* ECF 10-2 at 21-22 (government brief responding to Petitioner's arguments on direct appeal). The Third Circuit considered this argument on direct appeal but affirmed the District Court's judgment of conviction. (*See id.* at 36-37). This Court sees no reason to disturb that holding, particularly given that coram nobis and audita querela are such extraordinary remedies.

B. Claims IIa & IIb

Similar to his arguments in Claims IIa and IIb, Petitioner argued on direct appeal and in his prior coram nobis/audita querela petition that the second indictment was sought in bad faith and violated his constitutional rights because it was prompted by his attempt to obtain firearms. (*See* ECF 10-2 at 13-17 (government brief discussing Petitioner's claim on direct appeal); Crim. No. 91-108, ECF 1 at 3). On direct appeal, the Third Circuit rejected this claim. (*See* ECF 10-2 at 36-37). In reasserting a discriminatory prosecution argument in this action, Petitioner relies on *District of Columbia v. Heller*, 554 U.S. 570 (2008). This was also the basis of his argument in his prior coram nobis/audita querela petition. *See Zuckerman*, 367 F. App'x at 294. Notably, the Third Circuit affirmed the District Court's discriminatory prosecution ruling on multiple bases. First, the Third Circuit noted that Zuckerman had not shown that an extraordinary remedy like *coram nobis* or audita querela was necessary because he had not shown that he was convicted for conduct that was not criminal or that there was an error that affected the jurisdiction of the District Court. *See id.* Additionally, the Third Circuit noted "we agree with the District Court that . . . *Heller* does not impugn the prosecutor's motivation for seeking the second indictment against Zuckerman." *Id.* n.3. As with Claim I, this Court sees no reason to disturb the previous decisions that denied this claim.

Within Claim IIb, Petitioner notes that the Supreme Court recently declared 18 U.S.C. § 924(e)(2)(B)(ii) void for vagueness in *Johnson v. United States*, 135 S. Ct. 2551 (2015), and made the decision retroactive in *Welch v. United States*, 136 S. Ct. 1257 (2016). Federal law makes possession of a firearm by a felon a crime punishable by a prison term of up to 10 years, 18 U.S.C. §§ 922(g), 924(a)(2), but the Armed Career Criminal Act of 1984 ("ACCA") increases that sentence to a mandatory 15 years to life if the offender has three or more prior convictions

for a "serious drug offense" or a "violent felony." *See* 18 U.S.C. § 924(e)(1). The definition of "violent felony" includes the so-called residual clause, covering any felony that "otherwise involves conduct that presents a serious potential risk of physical injury to another." *Id.* § 924(e)(2)(B)(ii). In *Johnson*, the Supreme Court held that clause unconstitutional under the void-for-vagueness doctrine, and made that ruling retroactive in *Welch*.

Petitioner was not convicted under the ACCA. His sentence was not enhanced based on prior violent felony convictions. As such, *Johnson* and *Welch* have no relevance here.

C. Claim IIc

In Claim IIc, Petitioner alludes to the fact that the prosecuting Assistant United States Attorney in the first indictment, and who was apparently involved in the second indictment, was a former law clerk to Judge Debevoise. Petitioner claims that he only recently discovered this information and that it illustrates a conflict of interest on the part of the prosecuting attorney.

This claim does not warrant granting Petitioner extraordinary coram nobis or audita querela relief. It goes neither to the jurisdiction of the District Court nor does it establish that Petitioner was convicted of conduct that is not criminal. Accordingly, Petitioner is not entitled to the extraordinary coram nobis or audita querela relief on Claim IIc.

D. Claim III

Petitioner asserts in Claim III that he is entitled to relief pursuant to *Indiana v. Edwards*, 554 U.S. 164 (2008). Petitioner states this case changed the constitutional standard for which a defendant should be granted permission to proceed *pro se* at trial. In *Edwards*, the Supreme Court noted:

> This case focuses upon a criminal defendant whom a state court
> found mentally competent to stand trial if represented by counsel
> but not mentally competent to conduct that trial himself. We must
> decide whether in these circumstances the Constitution prohibits a

> State from insisting that the defendant proceed to trial with counsel, the State thereby denying the defendant the right to represent himself. See U.S. Const., Amdt. 6; *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). We conclude that the Constitution does not forbid a State so to insist.

*Edwards*, 554 U.S. at 167.

Even if this Court were to assume *arguendo* that *Edwards* has some impact on Petitioner's conviction, Petitioner fails to show why he did not raise this claim earlier. For example, *Edwards* was decided by the Supreme Court in June, 2008, or before Petitioner filed his previous petition for writ of coram nobis/audita querela in July, 2008. Next, even if applicable, it is not clear that *Edwards* would have retroactive effect to Petitioner's conviction that occurred in the 1990's. *See, e.g.*, *Panetti v. Stephens*, 727 F.3d 398, 414-15 (5th Cir. 2013) ("Ultimately, *Edwards* is no more fundamental than the many other non-*Gideon* procedural rules that the Supreme Court has refused to apply retroactively."). Next, *Edwards* is not really implicated in Petitioner's case. Indeed, as noted above, *Edwards* involved whether the Constitution *permits* the state to limit a defendant's right to self-representation. Thus, this Court fails to see *Edwards'* relevance to *Petitioner's* decision as it relates to his decision to represent himself at trial. Finally, this claim does not call into question that Petitioner was convicted of conduct that is no longer criminal and/or that the District Court lacked jurisdiction over Petitioner during his criminal proceedings. Accordingly, for these numerous reasons, Petitioner fails to show that he is entitled to the extraordinary coram nobis or audita querela relief in Claim III.

 E. <u>Claim IV</u>

Petitioner asserts in Claim IV that he is entitled to relief based on *Deck v. Missouri*, 544 U.S. 622 (2005) because he was improperly shackled during trial. In *Deck*, the United States Supreme Court held in part that the Constitution forbids a state from using visible shackles

during the guilt phase of a trial absent the presence of a special need. *See* 544 U.S. at 626. Petitioner states that he was handcuffed and leg-cuffed during trial and during pre-trial hearings.

First, this Court notes that Petitioner fails to indicate why he did not bring this claim sooner, such as on direct appeal, in his § 2255 proceedings or even in his previous petition for writ of coram nobis/audita querela filed in July, 2008 relying on *Illinois v. Allen*, 397 U.S. 337, 344 (1970) for example. *See id.* (noting sight of shackles may have a significant affect on the jury's feelings of a defendant). Furthermore, even *Deck* was issued several years prior to Petitioner's prior coram nobis/audita querela petition. Additionally, and perhaps most importantly, however, Petitioner fails to show in Claim IV that such an extraordinary remedy is necessary within this claim, *i.e.*, that he was convicted for conduct that is not criminal, or that the error affected the jurisdiction of the District Court. *See Zuckerman*, 367 F. App'x at 294 (indicating types of claims that may warrant the extraordinary remedy of coram nobis or audita querela relief). Claim IV does not warrant granting Petitioner the extraordinary relief under coram nobis or audita querela.

   F.  Claim V

In Claim V, Petitioner asserts that the District Court and the Third Circuit erred in not supporting his request for a jury instruction on permissible language to public officials. Respondents include in the appendix their brief on direct appeal which indicates that Petitioner requested at the charge conference that the judge instruct the jury that if they find the language constituting the threat was merely that of hyperbole, that Petitioner is entitled to acquittal. (*See* ECF 10-2 at 26). The District Judge denied this request. (*See id.*) Petitioner then raised this claim on appeal. Nevertheless, as previously indicated, the Third Circuit affirmed. (*See id.* at 37). Despite raising this claim unsuccessfully on direct appeal, Petitioner relies on more recent

United States Supreme Court decisions in *Snyder v. Phelps*, 562 U.S. 443 (2011) and *Matal v. Tam*, 137 S. Ct. 1744 (2017) to support his claim for coram nobis/audita querela relief.

As previously noted, a purported error that could be corrected by a new trial such as an error in jury instructions does not normally come within the type of extraordinary relief of coram nobis or audita querlea. *See Ragbir*, 950 F.3d at 62 (citations omitted) (coram nobis); *D'Amario v. U.S. Att'y General*, 668 F. App'x 406, 407 (3d Cir. 2016) (claim that trial court gave improper jury instructions could not be raised by a petition for coram nobis or audita querela). Indeed, Petitioner does not show in Claim V that he was convicted for conduct that is not criminal or that the purported error in the jury instructions affected the jurisdiction of the District Court.

Furthermore, neither *Snyder* nor *Matel*, which were both decided after Petitioner's most recent petition for writ of coram nobis/audita querela, have much relevancy to Petitioner's conviction for threatening a judge via mail. In *Snyder*, the Supreme Court held as follows:

> Given that Westboro's speech was at a public place on a matter of public concern, that speech is entitled to "special protection" under the First Amendment. Such speech cannot be restricted simply because it is upsetting or arouses contempt. "If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." *Texas v. Johnson,* 491 U.S. 397, 414, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989). Indeed, "the point of all speech protection ... is to shield just those choices of content that in someone's eyes are misguided, or even hurtful." *Hurley v. Irish–American Gay, Lesbian and Bisexual Group of Boston, Inc.,* 515 U.S. 557, 574, 115 S.Ct. 2338, 132 L.Ed.2d 487 (1995).

*Snyder*, 562 U.S. at 458. In *Matel*, the Supreme Court held that a provision of federal law prohibiting the registration of trademarks that may "disparage ... or bring ... into contemp[t] or disrepute" any "persons, living or dead." *See* 15 U.S.C. § 1052(a) violated the First Amendment Free Speech Clause. *See Matal* , 137 S. Ct. at 1751. Neither of these cases call into question

Petitioner's conviction.  Accordingly, Petitioner fails to show that he is entitled to the extraordinary relief under coram nobis or audita querela in Claim V.

## IV.     CONCLUSION

For the foregoing reasons, Petitioner's complaint/petition for writ of coram nobis/audita querela is denied.  An appropriate order will be entered.


DATED:  September 25, 2020                                              s/Madeline Cox Arleo
                                                                                              MADELINE COX ARLEO
                                                                                              United States District Judge